UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:11-CR-58-GFVT-HAI-1 |
| | ) | |
| DOUGLAS GLENN ROSE, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 46), considers reported violations of supervised release conditions by Defendant Douglas Glenn Rose. The District Court entered a judgment against Defendant on June 28, 2012, for assaulting a United States Postal employee, resulting in bodily injury in violation of 18 U.S.C. § 111(a)(1) & (b). (D.E. 38). Defendant was initially sentenced to imprisonment for time served (approximately 279 days), followed by 3 years of supervised release, including home detention for the first six months of that term. (*Id.*). Defendant began his initial term of supervised release on June 27, 2012.

On July 31, 2012, the United States Probation Office [hereinafter "USPO"] issued a Supervised Release Violation Report, and secured a warrant from the District Judge. The Report charges Defendant, in Violation #1, with violating the condition of his release providing that "[t]he defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." In Violation #2, the Report charges that

Defendant violated the condition of his release which states that "[t]he defendant shall not commit another federal, state, or local crime."

The Report states that, on July 13, 2012, Defendant submitted a urine specimen for drug testing that yielded a positive result for opiates (hydrocodone) via instant testing device. When questioned, Defendant denied using controlled substances. The specimen was sent to Alere Laboratory for confirmation of the positive result.

Then, on July 14, Defendant reportedly indicated during a telephone conversation with the USPO that he "may" have taken a hydrocodone tablet provided to him by his sister, who cleaned out his residence after his incarceration on the underlying charges. Defendant stated that he believed his sister gave him a hydrocodone tablet from a prescription for hydrocodone at his residence prescribed to him before he was arrested for the instant offense. Although Defendant was directed to produce the bottle from which his sister obtained the tablet, he did not, at the time, provide the USPO with any valid prescription for hydrocodone or indicative bottle. According to the Report, Alere Laboratory returned a positive test result for hydrocodone on July 19.

The USPO reportedly conducted a Kentucky All Schedule Prescription Electronic Report (KASPER) inquiry on July 16, which revealed that Defendant was prescribed 90 tablets of hydrocodone/acetaminophen on May 5, 2012. The Report notes that hydrocodone is a Schedule III Controlled Substance, and pursuant to the Sixth Circuit's ruling that use is the equivalent of possession, possession of hydrocodone constitutes conduct that would result in a violation of 21 U.S.C. § 844(a), a federal law.

On August 15, 2012, the USPO submitted an Addendum to the Report, which charges Defendant, in Violation #3, with violating the condition of his release that states:

2

> Defendant shall provide to the USPO, within 7 (seven) days of release from the custody of the Bureau of Prisons, a written report, in a form the USPO directs, listing each and every prescription medication in the Defendant's possession, custody, or control. The list shall include, but not be limited to, any prescription medication that contains a controlled substance and encompasses all current, past, and outdated or expired prescription medications in the Defendant's possession, custody, or control at the time of the report.

The Report states that, on June 27, 2012, Defendant reported to the USPO for his initial supervision intake, where the conditions of his release were reviewed in full. Defendant was specifically asked if he had any prescriptions, outdated or otherwise, in his possession, custody, or control, and he responded in the negative. When the USPO contacted Defendant's sister in connection with Violations #1 and #2, she reportedly denied removing a prescription bottle from Defendant's residence, but freely admitted to providing Defendant with a tablet from a prescription bottle at his residence prior to July 13. The Report notes that Defendant's failure to notify the USPO of prescriptions in his possession, custody, or control is a violation of this condition of his supervised release.

The Court conducted an initial appearance pursuant to Rule 32.1 on August 15, 2012, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. (D.E. 43). At the initial appearance, the United States made an oral motion for interim detention, and the Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). (*See id.*).

At the final hearing on August 20, 2012, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #3. (*See* D.E. 44). Further, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violation #3 as described in the Addendum

3

to the Report.  The United States thus established Violation #3 under the standard of § 3583(e).  The United States moved to dismiss Violations #1 and #2.[1]  At the final hearing, the United States argued for revocation and incarceration for a period of 6 months, followed by 30 months of supervised release.  Defendant sought a 3-month term of incarceration followed by 3 months of home detention, and leniency.

      The Court has evaluated the entire record, including the recent Supervised Release Violation Report, Addendum thereto, and the sentencing materials from the underlying Judgment in this District.  Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation[2] hinges on the gravity of the underlying offense of conviction.  Defendant's § 111 conviction was for a Class C felony.  *See* 18 U.S.C. § 111(b); 18 U.S.C. § 3559.  For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment.  *See* 18 U.S.C. § 3583(e)(3).

      The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).  Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #3.  Given Defendant's criminal history

---

[1] Notably, when arrested, Defendant provided a prescription bottle consistent with the KASPER check to the USMS.

[2] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Defendant's stipulation and the proffered corroborating evidence, including the USPO Report, satisfy.

category of I (the category at the time of the conviction in this District) and a Grade C violation, Defendant's Guidelines range, under the Revocation Table of Chapter 7, is 3 to 9 months.

The Court has considered all of the § 3553 factors imported into the § 3583(e) analysis, and finds that imprisonment of 6 months is appropriate based upon those factors. The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The instant violation is especially concerning given how quickly Defendant breached the Court's trust. Defendant was sentenced on June 27; that same day he violated the condition of his release requiring him to report all prescriptions to the USPO. The instant violation shows a lack of honesty and an unwillingness to take the conditions of his release seriously. Also troubling is the ease with which the violation could have been avoided. Defendant's untruthfulness is mystifying given how easily he could have reported his prescription history to the USPO. The Court must impose a sentence that is sufficient, but not greater than necessary, to address this breach of trust and the other statutory goals imported into § 3583(e).

The sentence of time served Defendant received on the underlying offense was one of optimism. The undersigned shared this optimism, particularly with respect to Defendant's appearance and demeanor at rearraignment proceedings. Unfortunately, in light of this history, the instant violation can only be described as disappointing. Defendant, in previous proceedings and with respect to the instant violation, appears angry at any mention that he suffers from a drug problem. However, the evidence shows that Defendant *does* have issues with drugs that must be

5

controlled. When imposing a sentence, the Court is required, pursuant to 18 U.S.C. § 3553, to consider the need to protect the public from the crimes of Defendant and to deter criminal conduct. Defendant's criminal history reflects numerous drug and alcohol-related offenses. Continued drug abuse certainly creates a risk of dangerous and criminal conduct.

The Court finds that Defendant's recommendation of 3 months incarceration, followed by 3 months of home detention, replicates the prior incentives created by Defendant's original sentence that included a home detention term. Those incentives did not result in compliance, and cannot be expected to do so at this point. The Court is hopeful that a sentence of 6 months incarceration will get Defendant's attention and impress upon him the need to take the conditions of his release seriously.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of imprisonment actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Here, the maximum term of supervised release is 36 months, *see* 18 U.S.C. § 3583(b)(2), less any revocation term imposed, *see* 18 U.S.C. § 3583(h). At the final hearing, Defendant asked the Court for another chance, and claimed that he would make the most of it. The Court is willing to give Defendant that opportunity, and therefore finds that a 30-month term of supervised release is appropriate. The Court cannot stress enough that the USPO is there to help Defendant, and the Court is hopeful that in the future Defendant will accept this help. This involves, among other things, being entirely forthcoming with the USPO regarding any prescriptions in Defendant's possession.

Defendant is warned that future violations will likely result in revocation sentences approaching the statutory maximum.

The Court **RECOMMENDS**, based on the violation found:

1. That Defendant be found to have committed Violation #3, and that Violations #1 and #2 be dismissed;

2. Revocation and imprisonment for a term of 6 months at a facility as close to Defendant's family as possible; and

3. An additional term of supervised release of 30 months. All conditions of release imposed by the Court's June 28 Judgment (*see* D.E. 38) shall apply, with the exception of the special condition of home detention.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 30th day of August, 2012.

8

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge